UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
UNITED STATES OF AMERICA :
: S1 01 Cr. 864 (GEL)
:
-v- : **OPINION AND ORDER**
:
VIRGILIO MARTINUS MANUEL, :
:
Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Jessica A. Roth, Assistant United States Attorney, Southern District of New York (David N. Kelley, United States Attorney), New York, NY, for the United States of America.

Marion A. Seltzer, Esq., New York, NY, for defendant Virgilio Martinus Manuel.

GERARD E. LYNCH, District Judge:

Defendant Virgilio Martinus Manuel was charged, along with six other defendants, in two different conspiracy counts.[1] Count One charged defendants with conspiring to import over 300,000 ecstasy pills into the United States, in violation of 21 U.S.C. §§ 963, 812, 952(a)(2) and 960(b)(3). Count Two charged them with conspiring to distribute or possess with intent to distribute ecstasy, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Manuel was tried before a jury from March 23 through March 30, 2005. At the close of the Government's case, the Court dismissed Count One, holding that the evidence was insufficient to prove beyond a reasonable doubt that Manuel knew that the drugs were destined for the United States.

---

[1] Three other defendants charged in the indictment, Victor deBoer, Ricardo Quintero, and Carlos Humberto Ruiz, have been convicted in separate proceedings. The remaining three defendants remain unapprehended.

However, the Court ruled at that time that this insufficiency did not require acquittal on Count Two. The jury subsequently found Manuel guilty on that count. Manuel now renews his motion for acquittal on that charge, arguing that the evidence was insufficient to permit his conviction and that the court lacks subject matter jurisdiction over the offense. The motion will be denied.

## BACKGROUND

Manuel does not contest that the Government's evidence was sufficient to establish the following facts. Beginning in the spring of 2001, a skillful German undercover police officer insinuated himself into a group of conspirators in the Netherlands, who hoped to export large quantities of ecstasy (a controlled substance whose distribution is illegal in the Netherlands, Germany, and the United States) from Europe to the United States. The undercover officer persuaded the chief conspirators, Beatriz Henao, Armando Enano, Valderama Ruiz, and Victor deBoer, that, for a fee, he could safely transport large quantities of pills to the United States.

The conspirators decided to try an initial test run of 47,000 pills in June 2001. DeBoer delivered the pills to the undercover officer in Germany, for transportation to America. From the criminals' perspective, the test went off almost without a hitch: The pills were delivered undetected (so far as they knew) to their courier in New York, Ricardo Quintero. Through a clever ruse, by making it appear that the drugs were discovered by accident after a successful delivery to the courier, the investigators were able to arrest Quintero and seize the drugs without bringing the undercover officer under suspicion. Writing that seizure off to bad luck and the incompetence of their New York courier, the leaders of the enterprise decided to go ahead with a larger shipment in August 2001.

Because deBoer was in Colombia at that time, the conspirators arranged to use a different courier to deliver the second shipment, of 301,000 pills, to the undercover officer at a highway rest stop in Germany. The conspirators advised the undercover officer that the courier would be driving a white car and wearing a white hat. That courier was Manuel, who arrived at the designated location in a white car wearing a white cap, made contact with the undercover, and delivered the drugs. On September 29, 2001, the undercover delivered the pills, as instructed by the conspiracy's leaders, to Carlos Ruiz in New York. Ruiz was arrested and the drugs seized.

So far as the evidence at trial revealed, Manuel's sole role in the conspiracy was to deliver the pills from Holland to Germany on August 7, 2001. For purposes of this motion, he does not dispute that a reasonable jury could infer that he knew that he was delivering illegal drugs, since (among other reasons) professional drug dealers would hardly entrust an unwitting dupe to carry drugs worth over $1,000,000 wholesale in Europe (and $6,000,000 to $9,000,000 retail at their eventual destination in the streets and clubs of New York) across an international border. There was no evidence whatsoever, on the other hand, suggesting that Manuel knew the eventual destination of the pills.[2]

---

[2] The Government halfheartedly argues in a footnote that the jury could have found, by the same process of inference, that Manuel must have had a high enough rank in the conspiracy to be privy to the details of the conspiracy. (Letter from AUSA Jessica A. Roth to the Court, dated April 19, 2005, at 8 n.3.) This claim is without merit. It is reasonable to assume that a courier entrusted the task of transporting valuable illegal commodities across an international border would be aware of the nature of his cargo; the conspirators would be foolish to run the risk that an unwitting courier would steal or neglect the cargo, attract police attention by violating traffic laws, or fail to take action to evade customs patrols. There is no reason to assume, however, that a mere courier, albeit one with criminal intent, would be advised of the business plans of the leaders. On the contrary, it would presumably be advisable to keep subordinates in the dark. Moreover, as evidence in the record indicates that the Netherlands is the leading source country for ecstasy, and that there is a thriving market for ecstasy in Germany, there is no reason why a courier would assume that the drugs were destined for further transshipment.

# DISCUSSION

I. Importation

The point of departure for analysis of Manuel's claims is United States v. Londono-Villa, 930 F.2d 994 (2d Cir. 1991). In Londono-Villa, as in this case, an undercover narcotics officer negotiated with foreign drug dealers (in that case, cocaine smugglers in Panama, rather than ecstasy sellers in the Netherlands) regarding drugs to be shipped to the United States. The negotiations having been successfully concluded, the undercover agent was advised that his pilot could pick up the drugs at a hidden airfield in Colombia and bring them back to Panama for eventual transshipment to the United States. Londono, an experienced pilot who had frequently used that airfield, was recruited by the conspirators to guide the undercover agent's plane to the secret landing strip; Londono would then remain in Colombia while the plane returned to Panama with the drugs. Londono unquestionably knew of the illegal purpose of the flight; indeed, he inspected the cocaine at the landing field, and was sufficiently intimate with the drug sellers that when the shipment turned out to be short, the parties relied on him to verify the amount of cocaine actually delivered to the plane. The cocaine was eventually transported to the United States. Id. at 995–96.

Nevertheless, the Second Circuit held that the evidence was insufficient to convict Londono of conspiracy to import the drugs into the United States. The Court held that in order to be guilty of this offense, an individual must by definition have knowledge that the illegal drugs are intended to enter the United States. This holding is rooted in the language of the statute. The very definition of the offense that is the object of the conspiracy requires that the defendant "knowingly or intentionally import[ ]" a controlled substance in violation of § 952. 21 U.S.C. §

4

960(a)(1). Section 952 is even more explicit, making it illegal "to import [a controlled substance] into the United States from any place outside thereof." 21 U.S.C. § 952. In order to conspire to "import [cocaine] into the United States," in violation of 21 U.S.C. § 963, one would necessarily have to agree not merely to possess the drug or to distribute it to others, but specifically to bring the drugs into the United States. Absent knowledge that the United States was the destination for the drug, one could not so agree. Id. at 997–99.

This precedent compelled the dismissal of Count One of the present indictment. Manuel, like Londono, was directly involved in smuggling illegal drugs across an international border. There was no evidence, however that Manuel, a mere courier so far as the evidence shows, was aware of the larger goal of the conspiracy. As in Londono-Villa, Manuel "was not involved in any of the lengthy negotiations for the sale of the [ecstasy]; he was not present at most of the meetings but rather came into the picture only at the end, in order to serve as a [courier] who was to pick up the [ecstacy] in [the Netherlands] and take it [to Germany]. There was no evidence that [Manuel] had been told that the United States was to be the ultimate destination of the cocaine, and no evidence that the United States was ever mentioned in his presence." Id. at 1001.[3]

---

[3] Londono-Villa thus compels rejection of the Government's argument, supra note 2, that Manuel's knowledge that the ecstasy was destined for the United States could be inferred, as the argument for such an inference was much stronger in Londono-Villa than here. Londono was operating in closer proximity to the United States than was Manuel; dealt with an American pilot, as opposed to a German intermediary; knew the drugs were being transported to a small country that was a major transshipment point for cocaine to the United States, not to a large country with its own market for ecstasy; and was a veteran smuggler and sufficiently trusted associate of the leaders to vouch for a shortfall in the delivery, while here the Government can merely speculate that Manuel was anything other than a one-time driver. The Court nevertheless held that absent evidence that Londono participated in negotiations or was otherwise advised that the drugs were destined for the United States, the evidence of intent to import was insufficient. Id. at 1001.

II. Distribution

Count Two, however, charges a different offense. The definition of the crime that is the object of the conspiracy charged in Count Two does not refer to importation, nor does it refer to the United States. Instead, the statute in question merely makes it a crime to "distribute, . . . or possess with intent to . . . distribute . . . a controlled substance." 21 U.S.C. § 841(a)(1). It is not questioned, for purposes of this motion, that Manuel conspired with others to do exactly that: by agreeing to undertake, by prearrangement with others, the delivery of over 300,000 ecstasy pills to the undercover in Germany, he joined a conspiracy whose object was the retail distribution of that controlled substance.

It is beyond dispute, as Manuel points out, that this offense requires a jurisdictional nexus to the United States. Congress did not intend to prohibit every act of distributing drugs anywhere in the world, but only distribution within the United States. See United States v. Hayes, 653 F.2d 8, 15–16 (1st Cir. 1981) (declining to "impute to Congress an intent to punish all whom its courts can catch, for conduct which has no consequences in the United States" by applying § 841(a)(1) to possession of a controlled substance outside the United States with intent to distribute, unless the "intent to distribute" is an intent to distribute within the United States) (quoting United States v. Aluminum Co. of America, 148 F.2d 416, 443 (2d Cir. 1945) (Hand, J.)). But the distribution of ecstasy that was the object of this conspiracy was indeed to occur in the United States. That was the very purpose of the conspiracy, which enlisted the undercover officer precisely for his supposed prowess in smuggling goods into the United States. Nor was this intention purely hypothetical: the conspirators arranged for colleagues in the Southern District of New York to receive the drugs, and both shipments were accepted by those co-conspirators here in New York.

6

The quantity of drugs in both shipments makes plain that the importation was for the purpose of further distribution here.

These facts doom Manuel's argument that "the court lacks subject matter jurisdiction over the defendant for the offenses charged." (Letter of Marion A. Seltzer, Esq., to the Court, dated April 8, 2005, at 1.) In the first place, the argument misstates the question. A court has subject matter jurisdiction over a case, not over a person, and the Court plainly has jurisdiction over the case, because the indictment charged a violation of federal law. What Manuel means to argue is either that Congress lacked legislative jurisdiction to prohibit his actions, or that he is not guilty of the offense charged because Congress did not intend the law to have extraterritorial application to his acts.

But however defined, Manuel's argument fails on the merits. Any challenge to the legislative jurisdiction of Congress must fail, since there is no constitutional bar to the extraterritorial application of penal laws. United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003). Whether a statute has such extraterritorial application is solely a question of legislative intent. United States v. Bowman, 260 U.S. 94, 97–98 (1922).[4] The Supreme Court has specifically upheld the exercise of jurisdiction over conspirators who have never entered the United States, where the conspiracy "was directed to violation of the United States law within the United States." Ford v. United States, 273 U.S. 593, 620 (1927). Where, as here, the object of a conspiracy is the violation of American law, and co-conspirators committed extensive overt acts

---

[4] While international law standards of national jurisdiction are not binding on the Congress, it should be noted that extraterritorial application of United States law to Manuel is entirely in keeping with international law, since international law permits a country to exercise jurisdiction over acts committed outside it that have harmful effects within it. See Restatement (Third) of the Foreign Relations Law of the United States §§ 402–403.

within American territory, there can be no serious question of the jurisdiction of the United States to punish all members of the conspiracy.

The sole remaining question is whether Congress intended to do so in enacting the statutes at issue in this case. Although there is a presumption that Congress does not intend a statute to apply to conduct outside the United States, that presumption can be overcome if Congress clearly expresses its intent. Yousef, 327 F.3d at 86. It is well-established that Congress intended to give extraterritorial reach to the statutes at issue here. Thus, the Second Circuit has held that jurisdiction to prosecute violations of § 841(a)(1) exists both where defendants possess drugs outside the United States with intent to distribute them in the United States, or possess drugs inside the United States with intent to distribute them elsewhere. United States v. Muench, 694 F.2d 28, 32–33 (2d Cir. 1982).

There is no question that *both* bases of jurisdiction applied here. The heads of the conspiracy possessed ecstasy in the Netherlands with intent to distribute it in the United States, and the conspirators in New York actually possessed the drug here with the intent to distribute it. Thus, the crime that was the object of the conspiracy Manuel joined was a violation of United States law.

Where a crime is within the jurisdiction of the United States, it is not necessary that the offender be aware of the facts that establish jurisdiction. Thus, for example, a defendant need not know that the person he is assaulting is a federal officer in order to be guilty of violating 18 U.S.C. § 111, United States v. Feola, 420 U.S. 671, 684 (1975); a defendant need not know that securities were transported across a state line to be guilty of interstate transportation of stolen securities under 18 U.S.C. § 2314, United States v. Eisenberg, 596 F.2d 522, 526 (2d Cir. 1979);

and a defendant need not know he was stealing from an interstate shipment to be guilty of violating 18 U.S.C. § 659, United States v. Green, 523 F.2d 229, 233–34 (2d Cir. 1975). If the defendant knowingly commits the acts that cause the harm that the legislature intended to prevent (here, the distribution of narcotics), and jurisdiction exists (because, objectively speaking, the crime satisfies the condition that creates jurisdiction), the statute has been violated. Had the defendants in Muench inadvertently wandered into United States territory from Canada, rather than being carried (unwillingly, but knowingly) into the United States by a diverted flight, it could have made no difference: in either case, they committed the crime of possessing narcotics with intent to distribute, and their actions in doing so came within the legislative jurisdiction of the United States in a manner that Congress intended to reach.

Nor does the fact that the crime charged is a conspiracy, and thus requires an intentional agreement to violate the statute, alter the result. Conviction for conspiracy requires no greater mens rea than that required to violate the underlying statute. Feola, 420 U.S. 694–96; Green, 523 F.2d at 233–34. Indeed, ordinary doctrines of conspiracy law confirm the conclusion that Manuel is guilty of the conspiracy charged in Count Two. It is axiomatic that a conspirator does not need to know all of the details of a conspiracy in order to be guilty of joining the agreement, United States v. Downing, 297 F.3d 52, 57 (2d Cir. 2002); United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000), and it is equally axiomatic that a conspirator is responsible for the overt acts of co-conspirators, including those necessary to establish venue, United States v. Smith, 198 F.3d 377, 382 (2d Cir. 1999); United States v. Naranjo, 14 F.3d 145, 147 (2d Cir. 1994). Here, it is unquestioned for purposes of this motion that Manuel and his co-conspirators were in "agreement on the essential nature of the plan, and on the kind of criminal conduct . . . in fact

9

contemplated." United States v. Gleason, 616 F.2d 2, 16 (2d Cir. 1979) (internal citations and quotation marks omitted). His co-conspirators committed acts on American soil, and other acts abroad with the specific intention of having effects in the United States. Under basic conspiracy law, he is guilty of joining their conspiracy, and is brought under American jurisdiction by their acts.

There is nothing unfair about this conclusion. Like the defendants in Feola, Manuel clearly "kn[ew] from the very outset that his planned course of conduct [was] wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the [country] affected. . . . The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum." 420 U.S. at 685. Unlike Londono-Villa, and Count One of this indictment, in which the object of the conspiracy by its nature required an intention to cross the American border, and in which the defendant did not share in the plan to send drugs into the United States that was the very essence of the conspiracy charged, the effect on the United States in Count Two is a mere jurisdictional element, which does not require knowledge or intent on the part of Manuel.

It was established beyond a reasonable doubt at trial that the conspiracy here was to possess a controlled substance with intent to distribute; that Manuel joined the conspiracy, with full knowledge that its goal was to possess and distribute ecstasy; and that that conspiracy came under the jurisdiction of the United States because co-conspirators both possessed the drugs in the United States and intended to distribute them here. Nothing more is required to convict Manuel of the charge in Count Two.

## CONCLUSION

For these reasons, defendant's motion for acquittal under Federal Rule of Criminal Procedure 29(c) is denied.

SO ORDERED.

Dated: New York, New York
       April 26, 2005

*[signature]*
GERARD E. LYNCH
United States District Judge